THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN BUCKLEY, Defendant (Carol Anfinson *et al.*, Contemnors-Appellants).

Second District Nos. 2—86—1123, 2—86—1124 cons.

Opinion filed December 29, 1987.

Mary Robinson, of Robinson & Skelnik, and Van R. Richards, Jr., of Schnell, Richards, Brown, Ritt, Freeman & Dalton, both of Elgin, for appellant Gary V. Johnson.

Jane H. Veldman and Catalina J. Sugayan, both of Lord, Bissell & Brook, of Chicago. for appellant Carol Anfinson.

Neil F. Hartigan, Attorney General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Roma Jones Stewart and Shawn W. Denney, Solicitors General, and Scott Graham and Mark L. Rotert, Assistant Attorneys General, of Chicago, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

In these consolidated appeals we consider whether a trial court is authorized to require defendant's attorney in a criminal case to advise the court of counsel's calculation of the running of the term time under the speedy trial requirements. Attorneys Carol Anfinson and Gary Johnson, defendant's counsel, appeal from an order of the circuit court holding them in direct civil contempt of court for refusing to do so, and placing them in the custody of the sheriff.

The issue to be considered arose during criminal proceedings brought against defendant, Stephen Buckley, who was charged with murder, kidnapping and rape by an indictment returned on March 9,

1984. Defendant was initially tried before a jury, together with two codefendants; verdicts of guilty were returned by the jury as to the codefendants, but it was unable to agree to a verdict in Buckley's case and a mistrial was declared on February 22, 1985. In his first trial, defendant Buckley was represented by retained counsel, attorneys Gary Johnson and Clifford Lund, who withdrew after the mistrial, and the court appointed the public defender of Du Page County to represent defendant. Deputy public defender Carol Anfinson was assigned and attorney Gary Johnson entered his appearance as cocounsel on a *pro bono* basis.

In preparation for the new trial, to be held before a different judge than was the first trial, defendant's attorneys renewed several motions made earlier and filed other new motions. On September 19, 1986, when the second trial was to commence, the State disclosed a newly discovered witness and defendant moved, alternatively, to bar the witness from testifying or to continue the trial for a six-month period. The trial court denied the motion to bar the witness and continued the case to October 30, 1986, for the setting of a new trial date. Defendant's attorney Johnson advised the court he did not believe the resultant delay in trial was attributable to defendant.

On October 30 the defense answered ready for trial and the court inquired of all counsel as to a trial date. A discussion ensued as to whether the defendant or State was chargeable for delays in bringing the case to retrial. Defendant's counsel advised the court they could be ready on November 5; however, the judge considered it would take a substantial amount of time to impanel a jury in the case, and he wanted to avoid, if possible, having the trial extend through the Christmas holidays. The court thereupon set January 14, 1987, as a tentative trial date and ordered that on November 5, 1986, the People and defendant each provide the court with their respective calculations as to the running of the term time in the case.

On November 5, 1986, defendant appeared before the court represented by attorney Johnson. The assistant State's Attorney advised the court, as ordered, that the People calculated that if the trial were to commence on January 14, 1987, as tentatively set, 87 days of delay would be chargeable to the State and the remainder would be attributable to the defendant. Defendant's attorney advised the court that he considered the State's calculation as arguable, but did not want to do so at that time. Attorney Johnson stated he did not wish to comment either way on the State's calculation, as the number of days which had passed under the speedy trial provisions were a matter of record which could be viewed by the court or prosecution, and if

defendant commented he may waive issues. When Attorney Johnson continued to refuse to advise the court in the matter, the judge warned counsel of the possibility of contempt and directed the defense to provide the court with its calculation of the running of the term time within seven days.

The matter came back before the court on November 12, 1986, at which time both of defendant's attorneys appeared and requested that the judge reconsider the order directing them to compute the term time. The attorneys stated that the order was improper and unauthorized, citing *People v. Cunningham* (1979), 77 Ill. App. 3d 949, 396 N.E.2d 876, and *People v. Brown* (1981), 94 Ill. App. 3d 609, 418 N.E.2d 1093, *aff'd* (1982), 92 Ill. 2d 248, 442 N.E.2d 136, in support of their argument that it was the duty of the State to bring defendant to a timely trial and the defense had no duty to assist the court in determining the speedy trial requirements of the case in setting a trial date.

The trial judge noted that a court has broad discretionary powers relating to the progress of cases pending before it, and that the case presented trial scheduling problems because of the approaching holidays, the nature of the case, and that its attendant publicity offered problems in the selection of an impartial jury and the possibility it must be sequestered. The judge stated that the defense had been ordered to advise the court of defendant's computation of the term time to assist the court in managing its calendar. The judge declined to reconsider its order to both counsel, and defendant's attorneys then respectfully declined to comply with it. Attorneys Anfinson and Johnson were found to be in direct civil contempt of court and were remanded to the custody of the sheriff until compliance. Appeal bonds were set by the court, which contemnors posted that day, and they filed their notices of appeal on November 18, 1986, from the orders directing counsel to submit their computation of the running of the speedy trial requirements in the case and from the order finding them to be in direct civil contempt of the court.

On November 19, 1986, contemnors appeared before the trial court, with counsel, and again declined to comply with the order. The judge stated he had reviewed the criminal proceedings from the clerk's records and had determined that the State's calculation of the term time was accurate and that the retrial of defendant Buckley would commence on January 14, 1987. The court found that the civil contempt matter was then moot and discharged contemnors. It also appears from the briefs of the parties to this appeal that the pending criminal charges against defendant Buckley were nol-prossed subse-

quent to the contempt proceedings which are the subject of these appeals.

We consider first the State's argument that the contempt issue raised by these appeals is now moot because the trial court ultimately discharged the contempt and because the criminal prosecution against defendant Stephen Buckley has been nol-prossed.

■■ ■ We initially note that the order discharging contemnors was entered on November 19, 1986, the day after their notices of appeal were filed, and the trial court thus lacked jurisdiction to do so. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380, 382; *Bachewicz v. American National Bank & Trust Co.* (1985), 135 Ill. App. 3d 294, 297-98, 482 N.E.2d 95, 98.) While the trial court retained the power to stay enforcement of the contempt judgment after the notices of appeal were filed (107 Ill. 2d R. 305(b)), it lacked authority to modify or change it so as to interfere with review of the judgment. In addition, a judgment of contempt against an attorney may have adverse collateral consequences relating to his future employment or may subject him to disciplinary proceedings in which the contemnor may not be permitted to relitigate the propriety of the contempt adjudication. (See *In re Williams* (1986), 111 Ill. 2d 105, 113, 488 N.E.2d 1017, 1021.) Also, although the trial court here discharged the civil contempt entered against the attorneys as moot, they did not comply with the order of the court and thus purge the contempt finding. (See *People v. Boclair* (1987), 119 Ill. 2d 368.) We conclude the issue raised in these appeals should be considered and may not properly be dismissed as moot.

The attorneys contend that the trial court lacked authority to order them to disclose their computation of the speedy trial term applicable to their client and, in addition, that the contempt judgments should be reversed because the attorneys acted respectfully, in good faith to their client's interest and did not obstruct or hinder the performance of any judicial duty. The State responds that the trial court properly exercised its discretion and inherent authority by requiring compliance with an order designed to assist administration of the court calendar. The State also asserts that the attorneys' conduct undermined the authority of the court by promoting reversible error.

■■■ Direct contempt of court is conduct occurring in the presence of the judge (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 543, 490 N.E.2d 1271, 1273), which is calculated to embarrass, hinder, or obstruct the court in its administration of justice or dignity, or bring the administration of law into disrepute (*People v. Halprin* (1983), 119 Ill. App. 3d 922, 928, 457 N.E.2d 1010, 1014, *appeal denied* (1984), 99 Ill.

2d 531). A judgment of contempt imposing a fine or imprisonment is appealable and presents the issue of the propriety of the order which has been violated. (*People v. Shukovsky* (1987), 151 Ill. App. 3d 966, 970, 503 N.E.2d 863, 866.) A showing that an order of the trial court was merely erroneous is no defense to a contempt citation for disobedience of the order, but rather the order must be shown to be void *ab initio*. (*People v. Huntley* (1986), 144 Ill. App. 3d 64, 68, 493 N.E.2d 1193, 1196.) A determination of contempt will not be disturbed unless there has been an abuse of discretion (*People v. Davis* (1987), 156 Ill. App. 3d 35, 38, 508 N.E.2d 1233, 1234); however, a contempt finding based upon an invalid order will be vacated. *People v. Williams* (1981), 87 Ill. 2d 161, 167, 429 N.E.2d 487, 489.

The contemnors essentially rely upon *People v. Brown* (1981), 94 Ill. App. 3d 609, 418 N.E.2d 1093, *aff'd* (1982), 92 Ill. 2d 248, 442 N.E.2d 136, and *People v. Cunningham* (1979), 77 Ill. App. 3d 949, 396 N.E.2d 876, to support their argument that the trial court lacked authority to require defendant's attorneys to advise the court as to the running of the speedy trial term in the case. They assert that as there was no motion for discharge before the court at that time, or claim by defendant the term had run, the order was not germane to any pending issue, and that the attorneys' refusal to comply thus did not hinder or obstruct the performance of any judicial function. The attorneys argue that it was the State's burden to bring defendant to a timely trial and, if the trial court distrusted the prosecutor's computation of the term, the judge was free to review the court file himself, but he was without authority to compel the defense attorneys to thus help the State.

*People v. Brown* and *People v. Cunningham*, cited by the contemnors, do stand for the proposition that a defendant in a criminal case has no affirmative duty to call to the attention of the trial court the running of a speedy trial term. (*Brown*, 94 Ill. App. 3d 609, 615-16, 418 N.E.2d 1093; *Cunningham*, 77 Ill. App. 3d 949, 952-53, 396 N.E.2d 876.) These cases hold that, where there is no fraud or subterfuge on the part of a defendant, it is the duty of the State to bring defendant to trial within the appropriate term. (See also *People v. Reimolds* (1982), 92 Ill. 2d 101, 106, 440 N.E.2d 872; *People v. Beyah* (1977), 67 Ill. 2d 423, 427, 367 N.E.2d 1334.) While these cases hold that there is no affirmative duty placed on defendant or his counsel to come forward with or volunteer facts relating to the running of the term, none of them, however, addresses what is defense counsel's duty when his assistance is sought by the trial court in order to set a trial date within term.

Implicated in this issue are the sometimes competing interests of a trial court in managing its calendar to permit the State and court to bring a criminal defendant to trial in a timely manner, and the interest of a defendant and his counsel in the possibility of an error or oversight in tracking time and attributing delay which, if it occurred, could entitle defendant to a discharge. Defendant's counsel here, as has generally been the practice in the defense of a criminal case, did not wish, at that time, to go into the matter of elapsed time and to which side various delays prior to trial were chargeable, as that might alert the State and trial judge to any necessity for an earlier setting. To do so, of course, would permit the court to avoid the error of fixing an untimely trial date which could act to free counsel's client from the charges against him when raised after the speedy trial term had passed.

 It has been held that when engaged in litigation an attorney owes a duty to the court to assist it in the expeditious consideration and disposal of cases. (*People v. Pincham* (1971), 3 Ill. App. 3d 295, 297, 279 N.E.2d 108; *People v. Buster* (1966), 77 Ill. App. 2d 224, 233, 222 N.E.2d 31.) Attorneys have a duty as officers of the court to make full and frank disclosure of all matters and facts which the court ought to know. (*People v. Sleezer* (1955), 8 Ill. App. 2d 12, 22, 130 N.E.2d 302, *modified* (1956), 10 Ill. 2d 47, 139 N.E.2d 259.) In a different, but analogous, context it has been stated that "[a]n attorney is an officer of the court, sworn to aid in the administration of justice and to act in good faith in all legal matters. *** They are a part of the machinery of law for the administration of justice." (*In re Alschuler* (1944), 388 Ill. 492, 503, 58 N.E.2d 563.) Our supreme court has also noted that "[a]n attorney's zeal to serve his client should never be carried to the extent of causing him to seek to accomplish his purpose by a disregard of the authority of the court or by seeking to secure from a court an order or judgment without a full and frank disclosure of all matters and facts which the court ought to know. Unless lawyers, who are officers of the court, show respect to its orders and judgments how can it be expected that laymen will do so?" *People ex rel. Fahey v. Burr* (1925), 316 Ill. 166, 182, 147 N.E. 47.

 In this case, contemnors declined to obey the order of the trial court as they considered it to be unauthorized on the premise that it was the State's duty to bring defendant to trial within the appropriate time. While that is the State's burden, at risk of the dismissal of the criminal charges brought against defendant if it fails to do so, that duty does not relieve defendant's counsel of their responsibility to the trial court in these circumstances.

The underlying right implicated herein is that of defendant to be given the speedy trial guaranteed to an accused by section 8, art. I of the Illinois Constitution of 1970, as implemented by section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 103—5). Whether in a case the defendant has been given the speedy trial to which he is entitled is not always readily ascertainable, as may be recognized by the undue numbers of appealed cases generated by that issue (see Ill. Ann. Stat, ch. 38, par. 103—5, at 56 through 175 (Smith-Hurd 1980)), to which this opinion will be added. The trial court's order for the State's Attorney and defendant's counsel to submit their respective computations of the posture of the case relative to defendant's right to a speedy trial was in furtherance of the judge's duty to give effect to that right. Identification of the scope of defendant's speedy trial rights in this case was out of the ordinary, as it required evaluation of the time within which defendant must be retried after a mistrial. (See *People v. Bazzell* (1977), 68 Ill. 2d 177, 369 N.E.2d 48; *People v. Dixon* (1980), 87 Ill. App. 3d 814, 410 N.E.2d 252.) Contemnors do not suggest that the information sought from them by the trial court was privileged, or in any manner protected by their attorney-client relationship with defendant. Such an argument would be difficult to make as the facts and conclusions of law the attorneys were called upon to produce would not be drawn from defendant, but from the trial court record. It was to that record that the attorneys invited the judge to direct his attention for information, rather than to them, in setting a trial date.

We conclude that the contemnors here avoided the order of the court for reasons of possible advantage to their client which their duty to him did not require and which they should not be permitted to bring about by this means. This court has spoken to the purpose of the 120-day rule as one "to guarantee a speedy trial, not to open a new procedural loophole which defense counsel could unconscionably use to obstruct the ends of justice." (*People v. George* (1979), 71 Ill. App. 3d 932, 934, 390 N.E.2d 586.) In a similar context, our supreme court noted that "[i]f a guilty defendant is permitted to speculate upon the chance that the administrative problems of a busy court may delay his case beyond the fixed period, the fundamental right to a speedy trial is depreciated to the status of a tactical move in a procedural game." *People v. De Cola* (1959), 15 Ill. 2d 527, 531, 155 N.E.2d 622.

We will not condone the gamesmanship utilized by contemnors in their effort to gain an advantage for their client under the speedy trial rules which was intended by neither the constitution nor statute.

A defendant is entitled to a speedy trial, and the courts will assure that he receives it or is discharged, but a defendant is not entitled to the assistance of his counsel to turn that right into a loophole to avoid trial.

We conclude that the trial judge was authorized to order defendant's counsel, and the State's Attorney, to provide their respective speedy trial computations in the case and, as officers of the court appearing in the matter, contemnors were obligated to promptly, accurately, and forthrightly respond to that direction. A court has the inherent power to enforce its orders by way of contempt (*In re G.B.* (1981), 88 Ill. 2d 36, 41, 430 N.E.2d 1096, *cert. denied* (1982), 456 U.S. 963, 72 L. Ed. 2d 487, 102 S. Ct. 2041) and properly exercised its authority in this instance.

Accordingly, the judgments of the circuit court are affirmed.

Affirmed.

LINDBERG, P.J., and REINHARD, J., concur.